IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRANDON DEWS,** | * |
| Plaintiff, | * |
| v. | *   Case No.: RWT 11cv962 |
| **WARDEN,** *et al.***,** | * |
| Defendants. | * |

## **MEMORANDUM OPINION**

Before the Court is Brandon Dews' ("Dews") complaint, as supplemented, filed pursuant to 42 U.S.C. § 1983. ECF Nos. 1, 3, and 5. Defendant Warden J. Phillips Morgan, by his attorneys, has filed a Motion to Dismiss or, in the Alternative for Summary Judgment (ECF No. 16). Defendants Corizon, Inc. f/k/a Correctional Medical Services, Inc. ("Corizon"), Beverly Sparks, PAC, Jennifer Bruno, LPN, and Lauri Russell, HSA (collectively, the "Medical Defendants"), by their counsel, have also filed a Motion to Dismiss or, in the Alternative for Summary Judgment (ECF No. 21). Dews was provided notice of the dispositive pleadings and an opportunity to reply (ECF Nos. 17, 22), but he has failed to file any opposition. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary. For the following reasons, Defendants' motions for summary judgment will be granted.[1]

**I.    BACKGROUND**

Dews, a self-represented litigant, filed this case on April 13, 2011. ECF No. 1. At that time, he was an inmate in Western Correctional Institution ("WCI"). Dews alleges that he was denied treatment for dyspnea, shortness of breath, and sleep apnea while at WCI. ECF No. 5 at 3.

---

[1] The dispositive pleadings will be treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Further, he alleges that the medical staff at WCI ignored his Sick Call Request Forms. *Id.* at 4. Plaintiff alleges that Nurse Bruno used foul language and harassed him. *Id.* at 5. As relief, he seeks $100,000 in compensatory damages and $100,000 in punitive damages. Plaintiff also requests a "CPAP machine" to help treat his sleep apnea and asks this Court to compel WCI authorities to help with his medical concerns. *Id.* at 6. Dews was released from incarceration in July of 2011. ECF No. 16, Ex. A at 5.

## II.    STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should

"view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002) (citation omitted). The court must, however, also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Smith v. Ozmint*, 578 F. 3d 246, 254 (4th Cir. 2009).

**III.    DISCUSSION**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier,* 896 F.2d at 848; *see also Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006). An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Prison officials cannot be held liable for actions or failures to act on the part of the medical staff, nor can they be held liable for relying on the professional medical judgment of health care providers employed by the prison to care for inmates. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Carter v. Morris*, 164 F.3d 215, 220-21 (4th Cir. 1999). Supervisory officials can only be liable where it is shown they failed to timely provide needed care, deliberately interfered with doctors' performance, or tacitly authorized or were deliberately indifferent to prison physicians' constitutional violations. *See Miltier*, 896 F.2d at 854-855.

**A. Warden Morgan**

The Complaint contains no allegations of improper conduct or error of omission against Warden Morgan. There is no claim that Warden Morgan was personally involved in Dews' medical treatment. To the extent Dews names Warden Morgan as a Defendant on the basis of supervisory liability, there must be personal involvement by the Defendant in the alleged violation to hold a supervisor culpable. *See Vinnedge*, 550 F.2d at 928. Supervisory liability under § 1983 must be supported with evidence that: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional

injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Dews fails to satisfy this standard and there are no grounds for assigning supervisory liability.

Further, it is undisputed that all medical decisions regarding the course of treatment for WCI inmates are made by the prisons contractual medical care provider, Corizon.  ECF No. 16 Ex. A ¶ 2.  Warden Morgan does not have the authority to order medical employees to perform treatment or direct their medical decision-making.  *See id*.  As such, Warden Morgan is not liable for actions or failures to act on the part of the medical staff nor can he be held liable for relying on the professional medical judgment of health care providers employed by the prison to care for inmates.  *See Vinnedge*, 550 F.2d at 928.  In any event, Dews does not claim that that Warden Morgan deliberately interfered with doctors' performance or that he was deliberately indifferent to medical providers' alleged constitutional violations.  Prison officials considered Dews' Administrative Remedy Requests complaints about his medical care.  They appropriately reviewed his records, found that Dews was seen frequently by the medical staff, and notified him that there was no substantiation for his ARP complaints.  *See* ECF No. 16, Ex. A at 3-5.  For all these reasons, Warden Morgan is entitled to summary judgment as a matter of law.

### B.  Medical Defendants

The Medical Defendants assert Dews' claims against them lack merit.  They argue Dews' release from prison rendered moot his request for injunctive relief as to a "CPAP machine" and an order compelling WCI authorities to help with his medical concerns.

1. **Corizon**

Corizon is a private corporate contractual provider of medical services to state institutions, administering medical care only through its agents and employees; thus, the liability alleged against CMS is necessarily vicarious in nature. Respondeat superior, a legal doctrine whereby an employer may be held responsible for its employees, does not apply in actions brought under 42 U.S.C. § 1983. *See Powell v. Shopco Laurel Company*, 678 F.2d 504, 506 (4th Cir. 1982); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999). Because principles of respondeat superior do not apply to § 1983 actions, Corizon is entitled to summary judgment as a matter of law.

2. **Beverly Sparks, Jennifer Bruno, and Lauri Russell** [2]

   a. **Medical Treatment**

The Medical Defendants' verified exhibits are undisputed. The exhibits show Dews was transferred from Maryland Correctional Institution-Jessup ("MCI-J") to WCI on April 3, 2009. ECF No. 21, Ex. A ¶ 3. Dews first complained about his breathing on June 6, 2010, when he submitted a Sick Call Request Form for shortness of breath due to the heat in his cell. *Id.* Plaintiff's vital signs were within normal limits and his pulse oximetry ("pulse ox"), which measures the amount of oxygen in the bloodstream, was 100%. *Id.* A normal reading is above 95%. *Id.* at n.1. On June 21, 2010, Dews submitted a second Sick Call Request, asserting the same complaint. Dews was scheduled for an appointment at Sick Call, but was at court on that date. *Id.* ¶ 3.

On July 27, 2010, physicians' assistant Beverly Sparks ("Sparks") evaluated Dews for shortness of breath. *Id.* ¶ 4. Dews told her his shortness of breath had improved in the past by

---

[2] Lauri Russell is Health Services Administrator for Corizon in the Western Region, which includes WCI. Service was not obtained on LPN Ryan Brown or Charlene Tarain, R.N. Although named as Defendants in the caption of the complaint, no specific claims are raised against Ryan Brown nor Charlene Tarain. Neither is mentioned in the body of the Complaint.

using a fan in his cell.  *Id.*  Sparks reported that when she attempted to measure Dews' peak expiratory flow, the volume of air in liters per minute blown out during the first seconds of expiration, he failed to cooperate by taking the full deep breath needed to produce an accurate measurement.  *Id.*; ECF No. 21 Ex. D at 6.  Normal measurement for a man of Dews' height is approximately 640 liters/minute.  Dews' breath measured was only 350 to 400 liters/minute, and his pulse ox was 97%.  ECF No. 21 Ex. A ¶ 4.  Sparks advised Dews to follow-up with the medical staff as needed.  *Id.*  He presented no further complaints about his breathing until March 11, 2011.

On March 11 and 12, 2011, Plaintiff submitted Sick Call Request Forms, complaining of difficulty breathing.  *Id.* ¶ 5.  Hetty Trenum, R.N. evaluated Dews on March 12, 2011, and recorded on his medical chart: 1) pulse ox measured 99%; 2) he denied having asthma or using inhaler; 3) he stated his respirations were easy and non-labored; 4) his lungs were clear; and 5) he did not appear to be in distress.  *Id.*; ECF No. 21 Ex. D at 6-9.  Trenum advised Dews to return to the clinic if his symptoms did not subside or worsened.  *Id.* Ex. A ¶ 5.

On March 16, 2011, Rebecca Andrews, R.N. examined Dews for his complaints of dyspnea (difficulty breathing) and sleep apnea (pauses in breathing or shallow breaths during sleep).  *Id.* ¶ 6.  Dews stated that he choked at night while sleeping.  *Id*.  Examination revealed his pulse ox measured 98% and he exhibited normal vital signs.  *Id.*  Dews was scheduled to see a physicians' assistant, but the appointment was cancelled because the physician's assistant was ill.  On March 18, 2011, Dews was seen by physician's assistant Lisa Schindler.  *Id.*  Dews reported a history of sleep apnea, and Dews reported that his cell mate told Dews that he stopped breathing in his sleep and snored so loudly that it kept the cell mate awake.  *Id.*  Schindler ordered a wide chin strap for Plaintiff to wear at night.  A chin strap is a conservative first measure for the treatment of sleep apnea.  *Id.*; ECF No. 21 Ex. D at 10-15.

7

On March 23, 25, 27, 28, and 30, and April 2, 2011, Dews submitted Sick Call Requests complaining of nasal congestion and dyspnea. ECF No. 21 Ex. A ¶ 7. He also complained that he had not received his chin strap. *Id.* On March 31, 2011, medical staff was notified by the manufacturer that the chin strap was on back order. The chin strap was received on April 14, 2011. Dews refused it when it was delivered to him. ECF No. 21 Ex. B ¶ 3; *Id.* Ex. E at 1-2. The chin strap was returned to Defendant Lauri Russell. On April 6, 2011, Sparks evaluated Dews for his complaint of right-sided nasal congestion. *Id.* Ex. A ¶ 7. His pulse ox measured 96% and his vital signs were within normal limits. *Id.* Sparks prescribed Nasarel, a nasal decongestion spray, for Dews and noted that a chin strap was ordered. *Id.*

On May 25, 2011, Plaintiff complained of chest discomfort, which he attributed to difficulty breathing. Jennifer Bruno, LPN ("Bruno") evaluated Plaintiff and noted that he was not in distress and that his pulse ox was 98%. *Id.* ¶ 8. On June 3, 2011, Dews agreed to try the chin strap. *Id.*; ECF No. 21 Ex. C ¶ 5. He later told Lauri Russell that he did not want to wear the chin strap because it did not fit over his hair. ECF No. 21 Ex. B ¶ 4.

On June 19, 2011, Dews submitted a Sick Call Request Form complaining of sleep apnea. *Id.* Ex. A ¶ 9. On June 22, 2011, Sparks evaluated Dews, who stated he was tested for sleep apnea in 2007 or 2008 at MCI-J. *Id.* Sparks could not find any results of a sleep study, the test used to diagnose sleep apnea. *Id.* She also recorded that Dews had returned the chin strap because he stated it did not work. *Id.* Examination revealed vital signs within normal limits and pulse ox measuring at 97%. P.A. *Id.* Dews was advised to follow-up as needed. *Id.*

On July 2, 2011, Dews complained of nasal congestion and stated his nasal spray was ineffective. *Id.* ¶ 10. Elizabeth Blank, R.N. examined Dews and found no nasal congestion. *Id.* His pulse ox was 96% and his vital signs were normal. *Id.* She advised Dews to increase fluid

intake and continue his medications. *Id.* On July 20, 2011, Dews was transferred to the Maryland Reception, Diagnostic, and Classification Center and soon after released from custody. *Id.* ¶ 11.

In this case, the uncontroverted records submitted by the Medical Defendants demonstrate Dews was repeatedly seen and treated by medical staff for his complaints. Dews was tested and the results revealed normal vital signs and no indication of shortness of breath. He was provided a chin strap, a conservative treatment for his apnea and nasal spray for congestion. Medical staff was unable to find evidence to support Dews' claims that a sleep study had been performed which diagnosed him as suffering sleep apnea. In short, medical providers evaluated Dews' and prescribed treatment for his complaints. Dews' disagreement with medical providers over the course of his treatment fails to meet the Eighth Amendment deliberate indifference standard. *See Estelle*, 429 U.S. at 104-105.

Lastly, Dews' transfer and eventual release from incarceration rendered moot his requests for injunctive relief insofar as he requests a CPAP machine and an order compelling WCI authorities to help with his medical concerns. The jurisdiction of federal courts is limited to live cases or controversies. U.S. CONST. art. III, § 2. When a claim no longer presents a viable legal issue to resolve, the claim becomes moot. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claims must be dismissed as moot. *See Blanciak v. Allegheny Ludlum Corporation*, 77 F.3d 690, 698–99 (3d Cir. 1996). The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007). Dews' transfer from WCI and eventual release thus rendered

moot his requests for injunctive relief. Accordingly, no genuine issues of material fact are presented and summary judgment in favor of Defendants is appropriate.

### b. Harassment

In response to Dews' claims that Bruno used foul language and harassed him, the Medical Defendants' exhibits show that on March 2, 2011, Nurse Bruno wrote a Matter of Record ("MOR"), or "ticket" on Dews after he handed her a love note. Bruno also notified her supervisors and security officers. Doc. No. 21 Ex. F at 2-3. On April 4, 2011, Dews refused his medication and attempted to give Bruno another note. She refused the note. He called Bruno a "dumbass" and threatened to throw feces on her. *Id.* at 4. Consequently, Bruno wrote another MOR. On April 11, 2011, after Bruno gave Dews his medication, he held his cell slot open and called her a "bitch," "whore," "sucker" and "dick" and made other comments. *Id.* at 5. Plaintiff called out that he was getting released soon and threatened to go to Bruno's house "to show [her] whats up." *See id*. Accordingly, Nurse Bruno wrote another MOR. ECF No. 21 Ex. C ¶ 3.

Bruno attests she never called Dew names, harassed him, or used foul language while addressing him. *Id.* ¶4. After an internal investigation of Dews' complaint that Bruno used foul language while addressing him, it was determined that there was no evidence to support Plaintiff's allegations and the matter was dismissed. ECF No. 21 Ex. B ¶ 5; *Id.* Ex. C ¶ 4; *Id.* Ex. E at 5.

Verbal harassment alone does not rise to the level of a constitutional violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam). Thus, when Dews' claim is viewed in the light most favorable to him, no genuine issue of material fact is presented. Bruno is entitled to summary judgment in her favor.

## IV.     CONCLUSION

For the reasons stated above, the Court will grant summary judgment in favor of Warden Morgan and the Medical Defendants. Judgment will be entered in favor of all Defendants. A separate Order follows.

Date: <u>February 7, 2012</u>                                                      <u>         /s/                                    </u>
                                                                                                ROGER W. TITUS
                                                                                     UNITED STATES DISTRICT JUDGE